**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

Fusion BPO Services Ltd.,

      Plaintiff,

 v.

HomeAdvisor, Inc.; Angi Inc.; and CraftJack Inc.,

      Defendants.

---

## COMPLAINT

---

Plaintiff Fusion BPO Services Ltd. ("Fusion"), through undersigned counsel, files the following Complaint:

### PARTIES, JURISDICTION, AND VENUE

1. Fusion is a Canadian corporation primarily with its principal place of business at 507 Place D'Armes, Bureau 800, Montreal, Quebec. Fusion has no physical presence in Colorado.

2. HomeAdvisor, Inc. ("HomeAdvisor") is a Delaware corporation with its principal place of business at 3601 Walnut Street, Denver, Colorado, 80205.

3. Angi Inc. ("Angi") is a Delaware corporation with its principal place of business at 3601 Walnut Street, Denver, Colorado, 80205.

4. CraftJack Inc. ("CraftJack") is an Illinois corporation with its principal place of business at 222 Merchandise Mart Plaza, Suite 430, Chicago, IL 60654.

5. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, because Fusion seeks to recover damages owed to it by Defendants for their breach of contract, which damages are in excess of $4,000,000.00.

6. This Court has personal jurisdiction over each Defendant because HomeAdvisor and Angi have their principal places of business in Colorado and all Defendants consented to personal jurisdiction in Colorado under the contract at issue in this case.

7. Venue is appropriate in this Court under 28 U.S.C. § 1391 because it is the judicial district in which HomeAdvisor and Angi reside.

## BACKGROUND

8. On or about July 24, 2017, Fusion and HomeAdvisor entered into a Master Services Agreement ("MSA"). A true and accurate copy of the MSA is attached as **Exhibit 1**.

9. Under the PSA, Fusion agreed to provide, and HomeAdvisor agreed to pay for, "[o]utbound customer acquisition services initially from Mexico City…"

10. The price HomeAdivsor agreed to pay Fusion for these services was set forth in section C of Exhibit A to the MSA.

11. The MSA's initial term was "one year unless sooner terminated…" and "automatically renew[ed] for subsequent terms of one (1) year, unless either Party provides Notice to other of its intent not to renew as provided in the Agreement."

12. The MSA expressly contemplates that Fusion and HomeAdvisor would later enter into subsequent statements of work to expand or add to the services Fusion was to provide under the MSA.

OM 1119564.1

13.     Between December 5, 2017, and November 1, 2022, Fusion and HomeAdvisor entered into a series of statements of work and amendments to the MSA and/or statements of work. True and accurate copies of those statements of work and amendments are attached as **Exhibits 2 through 17**.

14.     The Third Amendment to the MSA was entered into on or about April 3, 2018. *See* **Ex. 3**.

15.     Under the Third Amendment the MSA was "amended to add CraftJack Inc. as an additional party … to the [MSA], with a direct relationship between CraftJack and [Fusion]."

16.     Thus, CraftJack became bound to all terms of the MSA.

17.     After several amendments to the MSA and Statements of Work were entered into, Fusion, HomeAdvisor, and Angi, entered into two Statements of Work, effective November 1, 2022. *See* **Ex. 16**.

18.     Both of these Statements of Work identified Angi as the Customer, were signed on behalf of Angi, and obligated Angi to pay Fusion for the services provided thereunder. *See id*.

19.     Thus, Angi became bound by the MSA, as amended, and all applicable Statements of Work.

20.     Also effective November 1, 2022, Angi and Fusion entered into an Amendment to Master Services Agreement ("Final Amendment"). *See* **Ex. 17**.

21.     The Final Amendment, among other ways, modified the MSA as follows:

**4. Early Termination:**
Notwithstanding anything in Section 3(c) of the MSA to the contrary, Customer shall be required to provide sixty (60) days' notice to terminate any SOW for convenience when such SOW involves at least 100 FTE agents. For any SOW that involves fewer than 100 FTE agents, the thirty (30) day notice requirement within the MSA shall continue to apply.

**11. Payment Terms:**
Fusion will prepare monthly invoices with line-item detail describing all charges incurred over the monthly invoice period. Invoices will be provided on or before the fifth day of each month for Services rendered during the previous month. Payment is due within sixty (60) days of receipt of the invoice in accordance with Customer's invoicing process using Coupa. Fusion may terminate any SOW with ten (10) days' notice in the event Customer fails to pay the fees as provided herein.

OM 1119564.1

*See* **Ex. 17** at pp. 1, 3.

22.    Since inception of the MSA, Fusion regularly invoiced each Defendant, as appropriate, and each applicable Defendant typically timely paid those invoices.

23.    However, beginning in 2023, Defendants began to fail to timely pay Fusion's invoices.

24.    In particular, Fusion provided Angi with the following invoices, as required by the MSA, as amended and subject to any applicable Statement of Work, which invoices have not been paid as of the date of filing of this Complaint and have the following balances, including interest as applicable, as of approximately September 20, 2023:

| Date | Num | P. O. # | Terms | Due Date | Open Balance |
|---|---|---|---|---|---|
| 04/24/2023 | 101237 | PO001080 | Net 60 | 06/23/2023 | 35,380.80 |
| 05/17/2023 | 101404 | PO000844 | Net 60 | 07/16/2023 | 4,441.66 |
| 05/31/2023 | 101531 | PO000844 | Net 60 | 07/30/2023 | 4,369.17 |
| 05/31/2023 | 101535A | PO000840 | Net 60 | 07/30/2023 | 816,004.29 |
| 05/31/2023 | 101536A | PO000839 | Net 60 | 07/30/2023 | 144,529.65 |
| 05/31/2023 | 101537 | PO000844 | Net 60 | 07/30/2023 | 83,939.83 |
| 05/31/2023 | 101538 |  | Net 60 | 07/30/2023 | 9,735.73 |
| 05/31/2023 | 101569 | PO000873 | Net 60 | 07/30/2023 | 15,288.05 |
| 05/31/2023 | 101570A | PO001080 | Net 60 | 07/30/2023 | 44,993.77 |
| 06/13/2023 | 101548 | PO001029 | Net 60 | 08/12/2023 | 35,529.13 |
| 06/19/2023 | 101638 | PO000840 | Net 60 | 08/18/2023 | 816,991.75 |
| 06/19/2023 | 101642 | PO000844 | Net 60 | 08/18/2023 | 79,729.93 |
| 06/19/2023 | 101643 | PO000839 | Net 60 | 08/18/2023 | 144,074.04 |
| 06/19/2023 | 101649 | PO000873 | Net 60 | 08/18/2023 | 14,806.30 |
| 06/26/2023 | 101650 | PO001080 | Net 60 | 08/25/2023 | 41,025.49 |
| 06/30/2023 | 101735 | PO000844 | Net 60 | 08/29/2023 | 4,883.19 |
| 07/17/2023 | 101559 | PO000840 | Net 60 | 09/15/2023 | 300,279.24 |
| 07/17/2023 | 101560 | PO000844 | Net 60 | 09/15/2023 | 85,591.75 |
| 07/17/2023 | 101561 | PO000839 | Net 60 | 09/15/2023 | 150,441.71 |
| 07/17/2023 | 101562 | PO000873 | Net 60 | 09/15/2023 | 6,467.00 |
| 07/17/2023 | 101563 | PO001080 | Net 60 | 09/15/2023 | 79,037.99 |
| 07/31/2023 | 101879 | PO000844 | Net 60 | 09/29/2023 | 4,366.53 |
| 08/15/2023 | 101997 | PO000840 | Net 60 | 10/14/2023 | 219,530.00 |
| 08/15/2023 | 101998 | PO000844 | Net 60 | 10/14/2023 | 79,802.55 |
| 08/15/2023 | 101999 | PO000839 | Net 60 | 10/14/2023 | 158,035.15 |

OM 1119564.1

| Date | Num | P. O. # | Terms | Due Date | Open Balance |
|---|---|---|---|---|---|
| 08/15/2023 | 102000 | PO000873 | Net 60 | 10/14/2023 | 2,953.20 |
| 08/15/2023 | 102001 | PO001080 | Net 60 | 10/14/2023 | 111,071.93 |
| 08/31/2023 | 102033 | PO000844 | Net 60 | 10/30/2023 | 2,978.68 |
| 09/15/2023 | 102092 | PO000844 | Net 60 | 11/14/2023 | 73,980.96 |
| 09/15/2023 | 102093 | PO000873 | Net 60 | 11/14/2023 | 3,377.95 |
| 09/15/2023 | 102094 | PO001080 | Net 60 | 11/14/2023 | 106,103.54 |
| 09/15/2023 | 102095 | PO000839 | Net 60 | 11/14/2023 | 144,289.63 |
| 09/15/2023 | 102096 | PO000840 | Net 60 | 11/14/2023 | 228,706.16 |
| **Total** | | | | | **4,052,736.75** |

25.     For those invoices that have not yet come due, Angi has informed Fusion that it refuses to pay those invoices.

26.     Fusion has also sent CraftJack the following invoices, which remain unpaid and have the following balances, including interest as applicable, as of approximately September 20, 2023:

| Date | Num | P. O. # | Terms | Due Date | Aging | Open Balance |
|---|---|---|---|---|---|---|
| 04/30/2023 | 101280 | PO000838 | Net 60 | 06/29/2023 | 81 | 17,742.90 |
| 05/16/2023 | 101408 | PO000838 | Net 60 | 07/15/2023 | 65 | 27,179.60 |
| 05/16/2023 | 101409 | PO000838 | Net 60 | 07/15/2023 | 65 | 23,025.19 |
| 05/24/2023 | 101442 | PO000838 | Net 60 | 07/23/2023 | 57 | 19,420.00 |
| 05/31/2023 | 101528 | PO000838 | Net 60 | 07/30/2023 | 50 | 20,692.75 |
| 06/19/2023 | 101651A | PO000838 | Net 60 | 08/18/2023 | 31 | 24,537.00 |
| 06/19/2023 | 101652A | PO000838 | Net 60 | 08/18/2023 | 31 | 25,559.75 |
| 06/26/2023 | 101653 | PO000838 | Net 60 | 08/25/2023 | 24 | 27,521.74 |
| 06/30/2023 | 101728 | PO000838 | Net 60 | 08/29/2023 | 20 | 19,310.25 |
| 07/14/2023 | 101801 | PO000838 | Net 60 | 09/12/2023 | 6 | 25,516.96 |
| 07/14/2023 | 101802 | PO000838 | Net 60 | 09/12/2023 | 6 | 21,739.97 |
| 07/17/2023 | 101861 | PO000838 | Net 60 | 09/15/2023 | 3 | 23,290.00 |
| 07/31/2023 | 101877 | PO000838 | Net 60 | 09/29/2023 | | 18,573.50 |
| 08/15/2023 | 101969 | PO000838 | Net 60 | 10/14/2023 | | 20,821.58 |
| 08/15/2023 | 101995 | PO000838 | Net 60 | 10/14/2023 | | 23,814.12 |
| 08/15/2023 | 101996 | PO000838 | Net 60 | 10/14/2023 | | 20,429.75 |
| 08/31/2023 | 102032 | PO000838 | Net 60 | 10/30/2023 | | 18,912.00 |
| 09/15/2023 | 102089 | PO000838 | Net 60 | 11/14/2023 | | 23,096.64 |
| 09/15/2023 | 102090 | PO000838 | Net 60 | 11/14/2023 | | 28,975.78 |
| 09/15/2023 | 102091 | PO000838 | Net 60 | 11/14/2023 | | 22,159.08 |
| **Total** | | | | | | **452,318.56** |

OM 1119564.1

27.    Like Angi, CraftJack has informed Fusion that CraftJack has no intention of paying those invoices that have not yet come due.

28.    Indeed, on or about September 18, 2023, Defendants informed Fusion that they were terminating the MSA, as amended, and all active Statements of Work, effective immediately.

29.    However, at the time of that notice of termination, the active Statements of Work involved more than 100 active FTE Fusion agents.

30.    As such, Defendants were obligated to give Fusion 60 days' notice when terminating the parties' contractual relationship.

31.    Defendants, however, gave less than 60 days' notice.

32.    Further, upon information and belief, prior to giving notice of termination, Defendants knew they intended to both terminate the MSA, as amended, and all active Statements of Work, and not pay any previously-sent invoices and invoices that would be forthcoming.

33.    Defendants lead Fusion to believe, however, that the relationship would continue and that all such invoices would be paid, at least in part if not in whole.

34.    And, prior to terminating the MSA and active Statements of Work, Defendants, through Angi, directed Fusion to terminate in excess of 300 of Fusion's personnel and indicated that it would not pay for any work performed by those agents if Fusion did not terminate them.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract against all Defendants)

35.    Fusion incorporates all of the foregoing paragraphs as if set forth fully herein.

36.    Fusion and Defendants entered into a valid, binding contract. Namely, the MSA, as amended, and all applicable Statements of Work thereunder.

OM 1119564.1

37.    Fusion invoiced Defendants for all services performed. However, to date, Defendants have failed and refused to pay those invoices.

38.    As such, Defendants have breached their contractual obligations to Fusion.

39.    Fusion performed all of its obligations under that contract and no conditions precedent to its recovery remain unperformed.

40.    Fusion has been damaged by Defendants' breach of contract in an amount to be proven at trial.

WHEREFORE Fusion requests judgment in its favor against Defendants for its actual damages in an amount equal to at least the value of all unpaid invoices, pre- and post-judgment interest, its attorney fees, and its costs.

## SECOND CLAIM FOR RELIEF
### (Account Stated against all Defendants)

41.    Fusion incorporates all of the foregoing paragraphs as if set forth fully herein.

42.    According to the account as reflected in the invoices and as set forth herein, as of the date of filing of this Complaint, Angi and HomeAdvisor owe Fusion at least $4,052,736.75, plus all additional accrued and accruing interest.

43.    According to the account as reflected in the invoices and as set forth herein, as of the date of filing of this Complaint, CraftJack and HomeAdvisor owe Fusion $452,318.56, plus all additional accrued and accruing interest.

44.    Defendants ordered and agreed to pay for the services provided by Fusion as reflected on the invoices and, therefore, have accepted the accounting as reflected in the invoices sent by Fusion.

WHEREFORE Fusion requests judgment in its favor against Defendants for its actual damages in an amount equal to at least the value of all unpaid invoices, pre- and post-judgment

interest, its attorney fees, and its costs.

<strong><u>THIRD CLAIM FOR RELIEF</u></strong><br>
<strong>(Quantum Meruit against all Defendants – in the alternative)</strong>

45.     Fusion incorporates paragraphs 1 through 34 of its Complaint as if set forth fully herein.

46.     Defendants accepted the services provided by Fusion and therefore must pay the contract rate therefor.

47.     By accepting the services provided by Fusion without payment, Angi and HomeAdvisor have been unjustly enriched in the total amount of at least $4,052,736.75, plus all additional accrued and accruing interest.

48.     By accepting the services provided by Fusion without payment, Angi and HomeAdvisor have been unjustly enriched in the total amount of at least $452,318.56, plus all additional accrued and accruing interest.

49.     Fusion provided services to Defendants with the reasonable expectation that it would be paid by Defendants for those services.

50.     Defendants accepted Fusion's services under such circumstances that they knew that Fusion expected to be paid.

WHEREFORE, IN THE ALTERNATIVE, Fusion requests judgment in its favor and against Defendants in the amounts due, pre- and post-judgment interest, its attorney fees, and its costs.

<strong><u>FOURTH CLAIM FOR RELIEF</u></strong><br>
<strong>(Breach of the Implied Covenant of Good Faith and Fair Dealing against all Defendants)</strong>

51.     Fusion incorporates paragraphs 1 through 34 of its Complaint as if set forth fully herein.

Page <strong>8</strong> of <strong>9</strong>

52. There exists in all contracts an implied covenant of good faith and fair dealing.

53. Defendants breached that covenant of good faith and fair dealing by allowing Fusion to continue providing each of them services while knowing that they intended to (1) terminate their contractual relationship with Fusion, (2) not pay for the services provided, (3) provide less than 60 days' notice prior to termination; and (4) require Fusion to terminate in excess of 300 of its personnel.

54. Fusion has been damaged by this breach of the implied covenant in an amount to be proven at trial.

WHEREFORE Fusion requests judgment in its favor against Defendants for its actual damages and all other damages available to it at law, equity, and in contract, pre- and post-judgment interest, its attorney fees, and its costs.

## JURY DEMAND

Fusion hereby demands a jury trial on all issues so triable.

Respectfully submitted this 5th day of October, 2023.

**SPENCER FANE LLP**

*/s/ Jacob F. Hollars*
1700 Linclon St. Suite 2000
Denver, CO 80203
Phone:  303-839-3800
Fax:  303-839-3838
jhollars@spencerfane.com

and

*/s/ Josh Dickinson*
13815 FNB Parkway Suite 200
Omaha, NE 68154
Phone:  402-965-8600
Fax:  402-965-8601
jdickinson@spencerfane.com

*Attorneys for Plaintiff*

Page **9** of **9**

OM 1119564.1